IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

FRANK R. OWENS,                    )
                                   )     No. 4:03-cv-10537-RAW
           Petitioner,             )
                                   )     REPORT AND RECOMMENDATION
vs.                                )     ON PETITION FOR WRIT OF
                                   )     HABEAS CORPUS
MARK LUND, Superintendent,         )
                                   )
           Respondent.             )

     Petitioner Frank R. Owens, an inmate currently at the

Clarinda Correctional Facility in Clarinda, Iowa,[1] contends he is

in custody in violation of the Constitution of the United States.

He petitions for a Writ of Habeas Corpus. 28 U.S.C. § 2254. The

case has been referred to me for further proceedings and a report

and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

     On November 10, 1999 Owens was convicted of second-degree

burglary and third-degree burglary in connection with events

occurring on June 22, 1999 in Davenport, Iowa, and of being a

habitual offender. He was sentenced to two indeterminate 15-year

sentences to run consecutively. State v. Owens, No. FECR 223409

(Iowa Dist. Ct. Scott Cty.). His direct appeal was dismissed by the

Iowa Supreme Court as frivolous on November 3, 2000. State v.

---

[1] When Owens first filed his petition, he was incarcerated at
the Anamosa State Penitentiary, the warden of which is John Ault
II. Since then Owens has been transferred to the Clarinda
Correctional Facility, the superintendent of which is Mark Lund. On
the Court's own motion, Mark Lund is substituted as party
respondent in accordance with Fed. R. Civ. P. 25(d)(1) and Rule
2(a) of the Rules Governing Section 2254 Cases, which requires the
named respondent be the state officer who has custody of
petitioner.

Owens, Iowa Sup. Ct. No. 99-1983. He filed for post-conviction relief in state court and on March 5, 2005 the state district court dismissed his application. Owens v. State, Scott Cty. No. LACE 096261. Owens' appeal of this ruling was also dismissed as frivolous. Owens v. State, Iowa Sup. Ct. No. 02-503. Owens filed this timely petition for writ of habeas corpus on September 29, 2003. He proceeds pro se.[2]

As the Court views Owens' pro se brief, he claims his convictions are tainted with violations of his Fifth, Sixth and Fourteenth Amendment Due Process rights in numerous particulars discussed below.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The alleged criminal activity was simple and straight forward. Around 8:00 a.m. on June 22, 1999, Davenport police officer Greg Keller received a call about a suspicious person looking for lawns to mow. (Trial Tr. at 44-46, 61, 82, 98). About 8:15 a.m. Keller saw Petitioner Frank Owens with a new John Deere

---

[2] Petitioner originally asked for appointment of counsel. His request was granted and counsel was appointed. As with so many attorneys who have attempted to represent Mr. Owens, Owens became dissatisfied with his appointed counsel and asked for new counsel. That request was denied. (3/31/04 Order at 1). Owens was directed to advise the Court whether he would continue with appointed counsel or proceed pro se. (Id.) He elected to proceed pro se but asked for standby counsel to assist. The request for standby counsel was denied. (4/28/04 Order at 1). After the filing of briefs Owens again asked for appointment of counsel. That request was denied. (12/4/04 Order at 1-2).

lawn mower, a Black & Decker hedge trimmer and a pair of binoculars. (Id. at 43-47, 58). In response to Keller's questions, Owens said his name was "Larry Rocket" and he was mowing lawns with a lawn mower his landlord had lent him. (Id. at 46-47). Keller asked Owens why he had a gas mower but no gas can and an electric trimmer, but no electrical cord, to which Owens responded he would use gas and cords supplied by the people whose lawns he mowed. (Id. at 46-47). He told Keller he had the binoculars because he liked to watch the river in that area. (Id. at 47).

Keller called the station to see if "Larry Rocket" was wanted and then ran the serial number on the lawn mower to see if it was stolen. (Trial Tr. at 48). He received negative reports as to both queries and left. (Id.) A few minutes later, police dispatch called Keller back to report a "Larry Rocket" was wanted. Keller returned to look for Owens. (Id. at 49). Keller located Owens about a half block away in the rear parking lot of Rudy's Tacos. (Id.) Keller again asked Owens his name, mentioning there was a possible warrant. Owens admitted "Larry Rocket" was not his name and gave his true name to Keller. (Id. at 50). Keller then asked to see the binoculars. (Id. at 51). Inside the case he found a mailing label with a name and address. (Id.) By that time three other officers had arrived: Tubbs, Lopez and Lee. (Id.) Keller asked two officers, Tubbs and Lopez, to go to the address found in the binoculars case to see if binoculars were missing. (Id. at 52).

Up until this point Owens was outside of the squad car of Officer Charles Lee. Keller and Lee asked him to have a seat in the back seat of the car. (Trial Tr. at 52). Owens was not handcuffed at this time. (Id.) Officers Tubbs and Lopez radioed Keller and reported the individual living at the binoculars case address was missing a pair of binoculars. (Id. at 53). Keller received the transmission out of Owens' presence. Officer Lee then read Owens his Miranda rights. (Id.) Keller interviewed Owens further. He told Owens the binoculars were taken in a burglary, withholding the address and the identity of the victim. (Id.) After a few minutes Owens admitted he took the binoculars from a table on the enclosed rear porch of a house. (Id. at 53-54). Keller then asked Owens where the lawn mower and hedge trimmers came from. (Id. at 55). Owens told Keller he took them from a garage in the same neighborhood by kicking in a door to the basement of the garage. (Id.) The officers then asked Owens to direct them to the houses he had broken into. (Id. at 56). Owens accompanied Officer Lee to the two addresses where the burglaries occurred, directing Lee to each location. (Id. at 34-35). At one address to which Owens directed the officers they found and photographed a damaged door leading into a garage.[3] The homeowner, Toofe Rizk, identified the lawn mower and hedge clippers as stolen and said he had not given Owens

---

[3] Homeowner Toofe Rizk testified the structure was a separate, "carriage house" on the property with a basement and first-floor garage. (Trial Tr. at 20).

permission to enter the property or take the items. (<u>Id.</u> at 56-57). The homeowner at the other residence, Don Challed, had last seen his binoculars on the enclosed porch to his house and also said he had not given Owens permission to enter his house. (<u>Id</u>. at 12-15).

Owens was charged by trial information with one count of burglary in the second degree, one count of burglary in the third degree and with being a habitual offender based on prior felony convictions.[4] The case was set for trial October 18, 1999. Ten days before trial Owens' appointed counsel, attorney Kent Simmons, filed a motion to withdraw, citing breakdown of the attorney-client relationship. At the hearing on Simmons' motion, the court was informed Owens had threatened to sue Simmons unless there was an acquittal and animosity had developed between attorney and client. (10/8/99 Motion Hearing Tr. at 2). The court noted trial would be delayed if Simmons was allowed to withdraw and defendant had not waived speedy trial. (<u>Id.</u> at 3). The court granted the motion to

---

[4] Challed and his wife were in the home when the burglary occurred, hence the more serious second-degree burglary charge involving the Challed residence. In the circumstances of Owens' case, second-degree burglary required proof that persons were present in an occupied structure. Iowa Code § 713.5(2)(1999).

Owens was also charged with an additional count of burglary in the second degree arising out of an incident occurring on June 20, 1999 when he allegedly took a VCR from an occupied residence, in the presence of the homeowner. This count was eventually dismissed as the victim declined to prosecute the case. <u>State v. Owens</u>, No. FECR 223409, State Motion to Dismiss Count III as Amended on Trial Information (11/29/1999); Order to Dismiss Count III (12/2/1999)(Ia Dist. Court for Scott County). Prior to trial the count involving the June 20 incident was severed for separate trial. (Trial Tr. at 3).

Case 4:03-cv-10537-REL-RAW   Document 51   Filed 08/12/05   Page 6 of 32

withdraw and appointed substitute counsel, Murray Bell. (<u>Id.</u> at 4; Order Allowing Withdrawal of Counsel and Appointment of New Counsel). As a consequence the trial was continued. In a subsequent hearing, Owens again requested substitute counsel, which the court denied. (10/28/99 Motion Hearing Tr. at 2-4).

The case came to trial on November 8, 1999 beyond the 90-day state speedy trial period specified in Ia. R. Crim. P. 27(2)(b)(1999).[5] The speedy trial deadline was October 19. In proceedings just prior to commencement of trial the court took up argument on Mr. Bell's motion to dismiss the charges for failure to comply with the speedy trial rule. The court denied the motion, finding "just cause" for a continuance beyond the speedy trial date because of Owens' inability to get along with Mr. Simmons. (Trial Tr. at 9).

Owens testified in his defense. He told the jury that on the morning of his arrest, at about 6:00 a.m., he left the homeless shelter where he was staying to do some jogging. A little while later he ran into an individual he identified as "Slim" and another man. Owens testified he had talked to Slim the night before at the shelter. Slim and Owens "used to do a few burglaries together." (Trial Tr. at 78). They had not seen each other in a while. Owens told Slim he had been in prison for, among other burglaries,

---

[5] Now found at Ia. R. Crim. P. 2.33(2)(b).

6

breaking into the same garage at the Rizk residence he was now charged with breaking into again. (Id. at 78, 88-89).

Owens testified that when he saw Slim again on the morning of June 22 Slim had the stolen lawn mower and hedge trimmer with him. Slim was trying to get $150 for the items but "[o]ne thing led to another" and Owens agreed to buy them for $100. He gave Slim $53 he had in his pocket and promised to give him the rest in three days. (Id. at 79-81). Owens had time before he had to go to work that afternoon and thought he would mow some yards in the meantime to get back some of the money he had paid. (Id. at 97-98). Owens approached a woman who was jogging by and asked her if she knew anybody who needed their lawn cut, and he went to the residence of an elderly couple to ask if they wanted their lawn mowed. (Id. at 82, 97). These early morning contacts evidently led to the police being called and Officer Keller's interaction with Owens.

Owens claimed he found the binoculars on the sidewalk. (Trial Tr. at 82-83, 86).

The jury found Owens guilty on both burglary counts (Trial Tr. at 101). Owens had an extensive criminal history as a result of which he was sentenced as an habitual offender to two consecutive indeterminate terms not to exceed 15 years. (Sentencing Tr. at 7-9). See Iowa Code §§ 902.8, .9(2)(1999).

On appeal, the State Appellate Defender's office, which represented Owens, filed a motion for leave to withdraw with accompanying brief under Ia. R. App. P. 104(a) (1999),[6] explaining counsel was unable to find any error preserved for review. Upon review of the motion and Owens' response, the Iowa Supreme Court granted the motion to withdraw concluding "[a]fter . . . independent review of the record," the appeal was frivolous. State v. Owens, No. 99-1983, Order (Ia. S. Ct. Nov. 3, 2000).

Owens promptly thereafter filed a state court application for post-conviction relief (PCR). Iowa Code ch. 822. Following evidentiary hearing the PCR court made the following findings:

> Owens alleges Mr. Bell should have gotten the case dismissed because his right to a speedy trial within 90 days was violated. There is absolutely no basis to this claim. First, Kent Simmons had every right to file a Motion to Withdraw based upon the threats made by Owens. Under those circumstances, Judge Havercamp had a solid basis to find good cause to continue the trial beyond the 90-day period. The continuance was necessitated

---

[6] The rule, now, without significant change, found at Ia. R. App. P. 6.104, provided in relevant part:

> (a) If counsel appointed to represent a convicted indigent defendant in an appeal to the supreme court is convinced after conscientious investigation of the entire record . . . that the appeal is frivolous and that he cannot, in good conscience, proceed with the appeal, he may move the supreme court in writing to withdraw. The motion must be accompanied by a brief referring to anything in the record that might arguably support the appeal . . . .

8

because Owens caused Simmons to withdraw, which in turn caused a continuance, because new counsel needed time for trial preparation. Second, Mr. Bell did file a Motion to Dismiss as evidenced by his written Motion to Dismiss filed on the morning of trial. The motion pinpointed the 90-day requirement as the sole basis of the motion. Simply stated, Owens has failed to prove the first prong of the ineffective assistance of counsel test because Mr. Bell filed a timely Motion to Dismiss.

This case was investigated by Police Officers Keller, Tubbs and Lopez. Officer Keller testified at trial. Owens complains that Mr. Bell failed to show that Officer Keller was not credible and his testimony should not be believed, that he allowed Keller to give hearsay testimony by summarizing what Officers Tubbs and Lopez said, and that he failed to depose Tubbs and Lopez. He also argues Mr. Bell should have filed a Motion to Suppress because Keller testified that Owens confessed to him. Owens told the trial jury that he did not commit the crime. Owens is not a credible witness. Mr. Bell cross-examined Officer Kelly as to his memory of the facts and the accuracy of his testimony. It was not necessary to depose Tubbs and Lopez. Good trial lawyers, such as Mr. Bell, do not depose everyone.

There were no eyewitnesses to the crime; therefore, it was the police officer's word against the defendant's word. The jury chose to believe the police officers. A Motion to Suppress would have been meaningless inasmuch as there was nothing in writing . . . and no audiotape or videotape of the confession. Again, it was Officer Keller's word against Owens' word.

. . . .

Another allegation is that Mr. Bell failed to call "Slim" as a witness. Slim is a friend of Owens, but Owens never knew Slim's real name. Owens testified at this post-

conviction trial that he bought the property in question from Slim. On cross-examination he said he does not know what Slim would have testified to had he been called as a witness, but "was hoping he would have told the truth." The testimony by Owens regarding Slim failed to prove either prong of the ineffective assistance of counsel standard.

. . . .

Owens also complains that there was no evidence of actual breaking in order to substantiate a burglary conviction. The problem with this argument is that Iowa law does not require a defendant to break down a door, break a window or in some other manner force entry or physically damage part of a building in order to gain entry. An entry into an occupied personal residence without permission with the specific intent to commit a theft is Burglary.

. . . .

Owens also complains about the racial makeup of the jury. He is an African-American and there was only one African-American on the jury and that juror "slept through it." By his own admission, he "doesn't know if the verdict would have been different" if there had been a different racial composition to the jury.

. . . .

There also is the usual allegation of insufficient evidence to support the conviction. That is an issue for direct appeal, which leads to the final allegation of ineffectiveness of appellate counsel in failing to preserve the issues. As stated, the appeal was dismissed as being frivolous.

Owens v. State, No. 96261, Ruling on Application for Post-Conviction Relief at 4-7 (Iowa Dist. Ct. Scott County March 5, 2002)(hereinafter "PCR Ruling"). The Court found Owens had failed

to meet his "burden of proof in this post-conviction relief action to show by a preponderance of the evidence that his attorney failed to properly represent him or that any of the grounds asserted would have changed the outcome of the trial" and denied the application. Id. at 7. Owens appealed the ruling. His PCR appellate counsel moved for leave to withdraw on the same grounds his direct appeal appellate counsel had. Following its independent review of the record, the Iowa Supreme Court dismissed the PCR appeal as frivolous. Owens v. State, No. 02-503, Order (Ia. Sup. Ct. Aug. 14, 2003); see Ia. R. App. P. 6.33, 6.104.

## II.

### DISCUSSION

### A.   Exhaustion of Remedies

A state prisoner petitioning for a federal writ of habeas corpus must exhaust his or her available remedies in the state courts before coming to federal court. 28 U.S.C. § 2254(b)(1)(A). "The petitioner must present to the federal court the same factual arguments and legal theories that were presented to the state court." Anderson v. Groose, 106 F.3d 242, 245 (8th Cir.), cert. denied, 521 U.S. 1108 (1997); see Perry v. Kemna, 356 F.3d 880, 886 (8th Cir.), cert. denied, 125 S. Ct. 657 (2004); Wemark v. State, 322 F.3d 1018, 1020-21 (8th Cir.), cert. denied, 540 U.S. 870 (2003). The issues presented by Owens on habeas review are generally based on the same factual grounds as those he raised on

11

direct appeal and in his PCR proceedings. However, the two direct appeal issues identified in appellate counsel's R. 104 brief which are now presented on habeas review, sufficiency of the evidence and speedy trial, were presented to the state courts solely on state law grounds. <u>State v. Owens</u>, Iowa Sup. Ct. No. 99-1983 (Appellate Counsel's Brief at 5-9)(April 21, 2000). As the portion of the PCR ruling quoted above reflects, the allegations in the PCR court concerned mainly claimed ineffective assistance of trial counsel. In his habeas petition and brief, however, Owens focuses not so much on ineffective assistance of counsel, but on the merits of the underlying federal constitutional issues most of which have not, as far as the Court can tell, been squarely presented to the Iowa courts. Without conceding exhaustion, Respondent is content that Owens "arguably preserved most of his habeas claims" and seeks dismissal on the merits. The Court agrees with Respondent that in the circumstances it is appropriate to pass to the merits. 28 U.S.C. § 2254(b)(2).

In identifying the issues presented for habeas review this Court has relied on those laid out by Owens in his petition and brief (as supplemented).

## B. Standard of Review of State Court Determinations

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) codifies the standard for federal habeas review of state court findings and conclusions.

(d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

    (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause [of subparagraph (d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 413 (2000)(O'Connor, Jr., giving the opinion of the Court in Part II). See Page v. Burger, 406 F.3d 489, 493-94 (8th Cir. 2005); Williams v. Locke, 403 F.3d 1022, 1025 (8th Cir. 2005). Reasonableness is governed by an objective standard. Williams, 529 U.S. at 409; see Lyons v. Luebbers, 403

13

F.3d 585, 592 (8th Cir. 2005); <u>Sera v. Norris</u>, 400 F.3d 538, 542-43 (8th Cir. 2005). Thus, only when a state court decision is contrary to clearly established federal law, or beyond reason in the application of federal law or in the determination of the underlying facts, may a federal court's judgment on an issue supplant that of a state court.

As a result of the summary disposition of Owens' direct and PCR appeals, the only state court decisions which discussed Owens' claims are at the trial court level. Nonetheless, by rule the Iowa Supreme Court's dismissal of the appeals as frivolous followed a "full examination of all the record" and constituted an adjudication under AEDPA. <u>See</u> Ia. R. App. P. 104(d) (2000); Ia. R. App. P. 6.104(4)(2003).

## C. The Merits

### 1. <u>Speedy Trial</u>

Owens contends he was denied his Sixth Amendment right to a speedy trial. The ninety-day speedy trial period provided by Ia. R. Crim. P. 27(2)(b) ran on October 19, 1999. Owens' trial commenced on November 8, 1999, following a continuance from the original October 18 trial date. The continuance was due to the appointment of substitute counsel necessitated by Owens' threats to sue Mr. Simmons. Continuance beyond the ninety-day period provided in the rule can be granted for "good cause" and "delay attributable to the defendant." <u>State v. Winters</u>, 690 N.W.2d 903, 908 (Iowa

14

2005). The Iowa courts found good cause for the delay and the delay was clearly attributable to Mr. Owens. The Iowa courts' finding of good cause under a state rule of procedure is binding on this Court, as is the reasonable factual finding that Owens caused the delay. Mr. Owens can only obtain habeas relief if the delay nonetheless violated his federal constitutional right to a speedy trial found in the Sixth Amendment.

The Sixth Amendment does not impose a fixed time limit for bringing criminal cases to trial. Rather, courts apply a balancing test on an *ad hoc* basis. <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972). The U.S. Supreme Court has identified four factors to consider: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." <u>Id.</u> at 530; <u>see</u> <u>Perry</u>, 356 F.3d at 889 (citing <u>Barker</u>). But it is not necessary to go beyond the first factor unless the delay is long enough to be presumptively prejudicial. A less than five-month period from arrest to trial is not presumptively prejudicial. <u>See</u> <u>United States v. Titlbach</u>, 339 F.3d 692, 699 (8th Cir. 2003)(citing cases). In any event, this is a case of insignificant delay, without prejudice, caused by Owens to the extent beyond the state speedy trial period.

In the PCR proceeding Owens complained his substitute trial counsel, Mr. Bell, was ineffective for failing to raise the speedy trial issue. To the extent the present petition can be

viewed as presenting an ineffectiveness claim in this regard, it clearly lacks a factual basis because Mr. Bell in fact filed a motion to dismiss on speedy trial grounds which was denied. He could not have done more.

### 2. The "Confession"

Owens asserts his Due Process and Fifth Amendment rights were violated when the trial court allowed into evidence his statements to police admitting involvement in the burglaries without a hearing to determine voluntariness. Relatedly, he contends the state did not prove the statements were voluntarily given or establish that he waived his Miranda rights. Mr. Bell did not file a motion to suppress Owens' post-Miranda oral statements to the officers. It would have been difficult for him to do so because Owens denied making the statements at all. (See PCR Tr. at 14-16).

Owens relies on Jackson v. Denno, 378 U.S. 368 (1964), for his argument there should have been a hearing to determine voluntariness before the alleged confession was heard by the jury. Due Process does require such a hearing prior to the presentation of evidence of a confession to a jury, but only if the defendant raises an issue about voluntariness. Id. at 381-94. See United States v. Long Feather, 299 F.3d 915, 917-18 (8th Cir. 2002). There was no contention or evidence at Owens' trial that the alleged statements testified to by officers Keller and Lee were

involuntarily made by Owens. After Officer Keller learned the binoculars were stolen, and Officer Lee read Owens his <u>Miranda</u> rights, Owens, confronted with information about the stolen binoculars, admitted he entered the home and took them. He subsequently admitted taking the lawn mower and hedge trimmer from another residence in the area. In his PCR hearing testimony Owens admitted he voluntarily spoke with Keller, though he denied the admissions. (PCR Tr. at 14). In his habeas brief he does not argue the statements attributed to him were involuntarily made, much less point to evidence to support any such claim.

Owens' complaint in the PCR proceedings about the alleged confession was that he did not admit to the burglaries, the officers were lying, his attorney did not do a good enough job attacking their credibility, and his purported confession should not have been admitted into evidence because it was not a signed or recorded confession.[7] (<u>Id.</u> at 15-18, 48). None of this has anything to do with voluntariness.

Because the voluntariness of the alleged confession was not disputed at trial the state was not required to prove the point. As to the waiver of <u>Miranda</u> rights, Owens acknowledged in his trial testimony that he had been read his <u>Miranda</u> rights.

---

[7] In his habeas petition Owens renews his complaint about the lack of a signed or tape recorded confession. There is no federal constitutional requirement that a confession be proved by a signed document or tape recorded statement.

(Trial Tr. at 84). He has not claimed his <u>Miranda</u> rights were inadequately explained or that he did not understand them. He thus puts forward no reason to believe otherwise than that by voluntarily speaking to Keller immediately after having been advised of his right not to do so, he implicitly waived his <u>Miranda</u> rights. <u>See</u> <u>North Carolina v. Butler</u>, 441 U.S. 369, 373 (1979); <u>Thai v. Mapes</u>, 412 F.3d 970, 977 (8th Cir. 2005); <u>United States v. House</u>, 939 F.2d 659, 662 (8th Cir. 1991).

In the PCR proceeding Owens contended attorney Bell had been ineffective for failing to attempt to suppress the officers' testimony or adequately challenge their credibility. The PCR trial court rejected these contentions, though not with much discussion. To the extent the habeas petition can be viewed as raising ineffective assistance of counsel in these regards, this Court believes the state courts' decision was reasonable on the law and facts disclosed in the record.

Ineffective assistance of counsel claims are analyzed under the well-established two-prong standard laid out in <u>Strickland v. Washington</u>, 466 U.S. 668, 696 (1984). First, petitioner must show his attorney's performance was deficient, which necessitates an evaluation of the reasonableness of the attorney's performance at the time under "prevailing professional norms." <u>Id.</u> at 688-91; <u>see</u> <u>Fields v. United States</u>, 201 F.3d 1025, 1027 (8th Cir.), <u>cert. denied</u>, 531 U.S. 885 (2000). This is a

18

"highly deferential standard" in which it is presumed "counsel's conduct 'falls within the wide range of reasonable professional assistance.'" <u>Osborne v. Purkett</u>, 411 F.3d 911, 918 (8th Cir. 2005)(quoting <u>Strickland</u>, 466 U.S. at 689). Second, the court must be convinced there is a reasonable probability that the outcome would have been different. <u>Strickland</u>, 466 U.S. at 694. The focus here is on whether the deficient performance "render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369, 372 (1993).

As the PCR trial court noted it was Owens' word against that of officers Keller and Lee. The record discloses no reason to have questioned the voluntariness of the statements attributed to Owens or the knowing waiver of his <u>Miranda</u> rights. As he had no reason to seek suppression, Bell's failure to do so did not fall below prevailing professional norms. Moreover, it is very unlikely any such motion would have been successful.

Mr. Bell attempted to impeach the credibility of both officers Lee and Keller through his cross-examination. With Lee he suggested Lee may have driven to the burglary locations with Owens without being directed by Owens, and he secured an admission that, contrary to Keller's testimony, Owens might have been handcuffed by Keller when Lee arrived at the scene. (Trial Tr. at 40). With Keller Bell attempted to establish that Keller was mad that Owens had lied about his identity, questioned Keller closely about his

testimony that he had not handcuffed Owens, and sought to establish Keller did not have an independent recollection about what had occurred and relied on his police report. (Id. at 61-64). The record thus reflects Bell did attempt to impeach the credibility of the police officers' testimony, and Owens identifies no evidence to suggest Bell's efforts in this regard fell outside the wide range of reasonable professional assistance.

Bell did not provide ineffective assistance concerning the alleged confession or in challenging the police testimony, nor has any prejudice been demonstrated.

   3.   **"Slim"**

Owens testified he bought the stolen property from "Slim" who, he suggested, might have been attracted to the Rizk residence by Owens' description to Slim the night before of the valuable property kept in the carriage house. At the PCR hearing Owens testified that while he did not know Slim's name, he told attorney Bell that Slim lived at the homeless shelter. Owens hoped Slim would corroborate his testimony about the purchase of the lawn mower and hedge trimmer. (Id. at 29). The PCR trial court found, without elaboration, that Owens' testimony regarding Slim failed to prove either prong of the ineffective assistance of counsel standard. (PCR Ruling at 5-6).

Bell was not called to testify at the PCR hearing. There is no record concerning his strategy or preparation for trial

beyond what can be inferred from the trial transcript and the PCR transcript. Whether Bell attempted to locate Slim, the results of any such inquiries, and the reasons for Bell's action or inaction are unknown.

Clearly, defense counsel "has a 'duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" Simmons v. Luebbers, 299 F.3d 929, 932 (8th Cir. 2002), cert. denied, 538 U.S. 923 (2003)(quoting Strickland, 466 U.S. at 691). However, there is a strong presumption that counsel's actions in investigating the case were part of a sound trial strategy. Id.; see Burton v. Dormire, 295 F.3d 839, 845 (8th Cir. 2002), cert. denied, 538 U.S. 1002 (2003).

The state courts were not required to accept at face value Owens' testimony about the availability of a corroborating witness. The PCR trial court found that Owens was "not a credible witness" in his denials of involvement in the crimes. (PCR Ruling at 5). It is reasonable to infer from the PCR ruling that the court was dubious about Slim's alleged involvement or that his testimony would have been helpful to Owens. The PCR trial court's assessment of Owens' credibility was not unreasonable. Proof of the ineffectiveness claim with respect to the failure to locate Slim and call him as a witness was dependent solely on Owens' testimony. If, as it appears, the PCR trial court did not credit Owens'

testimony, its conclusion that Owens had not proved either prong of the ineffective assistance analysis was not an unreasonable determination in light of the evidence before the court because nothing else rebutted the presumption that Mr. Bell acted in accordance with sound trial strategy. In the Court's judgment the insufficiency of the evidence to establish ineffective assistance is particularly the case on the prejudice prong. The Court can only speculate what "Slim," if he exists, would have said. Thus there is no basis to find a reasonable probability that the result of the trial would have been different or that the result reached by the jury was unreliable or tainted with fundamental unfairness.

**4.   Insufficient Evidence of Guilt**

Owens argues the evidence was insufficient to prove beyond a reasonable doubt the first element of each of the burglary offenses of which he was convicted, that on or about June 22, 1999 he "broke or entered" the property of Don Challed and Toofe Rizk. (Pet. Brief at 6); see Inst. No. 12, 14. In his petition Owens also questions the sufficiency of the evidence on the element of specific intent to commit a theft.[8]

---

[8] The jury was instructed as follows on the elements of each offense:

INSTRUCTION NO. 12

The State must prove all of the following elements of Burglary in the Second Degree under Count I:

(continued...)

22

     1.   On or about 22nd day of June, 1999, the defendant broke or entered the property of Don Challed.

     2.   The property of Don Challed was an occupied structure as defined in Instruction No. 16.

     3.   The defendant did not have permission or authority to break or enter the property of Don Challed.

     4.   The defendant did so with the specific intent to commit a theft.

     5.   Persons were present in or upon the occupied structure.

If the State has proved all of the elements, the defendant is guilty of Burglary in the Second Degree under Count I. If the State has failed to prove any one of the elements, the defendant is not guilty of Burglary in the Second Degree under Count I and you will then consider the lesser included offense of Burglary in the Third Degree as explained in Instruction No. 13.

INSTRUCTION NO. 14

The State must prove all of the following elements of Burglary in the Third Degree under Count II:

     1.   On or about 22nd day of June, 1999, the defendant broke or entered the property of Toofe Rizk.

     2.   The property of Toofe Rizk was an occupied structure as defined in Instruction No. 16.

     3.   The defendant did not have permission or authority to break or enter the property of Toofe Rizk.

     4.   The defendant did so with the specific intent to commit a theft.

If the State has proved all of the elements, the defendant is guilty of Burglary in the Third Degree under Count II. If the State has failed to prove any one of the elements, the defendant is not guilty of

(continued...)

"A challenge to a state conviction brought on the grounds that the evidence cannot fairly be deemed sufficient to have established guilt beyond a reasonable doubt states a federal constitutional claim" under the Due Process Clause of the Fourteenth Amendment. Jackson v. Virginia, 443 U.S. 307, 322 (1979). Federal habeas review of this issue is under a very limited standard: viewing the evidence in the light most favorable to the prosecution could "any rational trier of fact . . . have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis original); see e.g., Sexton v. Kemna, 278 F.3d 808, 814 (8th Cir.), cert. denied, 537 U.S. 886 (2002); United States v. Raines, 243 F.3d 419, 422 (8th Cir.), cert. denied, 532 U.S. 1073 (2001); Loeblein v. Dormire, 229 F.3d 724, 726 (8th Cir. 2000), cert. denied, 532 U.S. 982 (2001). The Court presumes all conflicting inferences in the record were resolved in the state's favor and the Court "must defer to that resolution." Sexton, 278 F.3d at 814 (quoting Miller v. Leapley, 34 F.3d 582, 585 (8th Cir.

---

[8](...continued)
    Burglary in the Third Degree under Count II
    and you will then consider the lesser included
    offense of Criminal Trespass as explained in
    Instruction No. 15.

The term "occupied structure" does not require that a person actually be present. An "occupied structure" is any building or structure adapted for overnight accommodation of persons or for the storage or safekeeping of anything of value. Iowa Code § 702.12.

1994)); <u>Jackson</u>, 443 U.S. at 326; <u>Blair-Bey v. Nix</u>, 44 F.3d 711, 713 (8th Cir. 1995).

Clearly, a rational fact finder could have found Owens broke or entered the property of Challed and Rizk on or about the date alleged. The temporal aspect was adequately established through the testimony of Challed and Rizk, Owens' admission to the police, and the overall surrounding circumstances. Owens had the stolen property in his possession and admitted to the police that he had entered the Challed home and took the binoculars, and broke and entered the Rizk carriage house to take the lawn mower and hedge trimmers. The evidence that Owens stole the lawn mower, hedge trimmer and binoculars, and the testimony of Challed and Rizk to the effect that Owens had no legitimate reason to be on their property, permitted the jury to infer the specific intent element.

At the PCR hearing Owens testified he did not believe there was adequate evidence of "breaking." He evidently believed the crime of burglary required evidence of a forced entry. (PCR Tr. at 35-36). In Iowa, as the trial court instructed, the crime of burglary is also committed by an unauthorized entry into an occupied structure with the intent to commit a theft. Iowa Code § 713.1. There is no forced entry requirement, though there was ample evidence that the Rizk carriage house had been forcibly broken into by Owens.

At bottom Owens' complaints about the sufficiency of the evidence are encapsulated in his oft-repeated assertion that the testimony of officers Keller and Lee about his admissions to involvement in the burglaries was not worthy of belief. He hit the nail on the head when he testified at the PCR hearing:

> . . . We're talking about the credibility here. Common sense, you've got two police officers, you've got a career criminal, who do you think the jury is going to believe? And that's what the state relied on, the jury believing the police officers.

(PCR Tr. at 54). That is just the point, the jury credited the officers' testimony over that of Owens, which they were entitled to do. "Decisions regarding credibility of witnesses are to be resolved in favor of the jury's verdict." United States v. Eagle, 133 F.3d 608, 610 (8th Cir. 1998)(quoting United States v. Goodlow, 105 F.3d 1203, 1206 (8th Cir. 1997)).[9]

## 5.   Confrontation Clause/Hearsay

Officer Keller dispatched officers Lopez and Tubbs to the address on the binoculars case to see if the owner was missing a pair of binoculars. (Trial Tr. at 52). Owens was asked by Keller to

---

[9] At the conclusion of the state's case, Mr. Bell moved for directed verdict of acquittal on both counts because of insufficient evidence on each element of the charges. The trial court found sufficient evidence had been presented on both counts. (Trial Tr. at 71-72). In dismissing the appeal, which included the insufficient evidence issue, the Iowa Supreme Court implicitly agreed. It follows from the discussion above that this Court is in full agreement with the Iowa courts' determination that the evidence was sufficient to establish Owens' guilt.

sit in Officer Lee's squad car while Lopez and Tubbs went to investigate. The prosecutor then asked if Keller had had a further conversation with Owens and Keller said that he had. The prosecutor then followed up:

> Q.   And what did [Owens] tell you at that point about these items?
>
> A.   Well, about this time is when Officer Tubbs and Lopez radioed back that they were at the address and that there was indeed, these binoculars did belong to that address and they had just been stolen from a burglary there.

(Id. at 52-53). Attorney Bell did not move to strike the answer.[10] Though Petitioner's brief is not clear, the Court understands from reading the PCR transcript together with the brief that he contends Keller's testimony about what Tubbs and Lopez told him the homeowner, presumably Challed, had said about the binoculars was hearsay and violated the Sixth Amendment Confrontation Clause. (See Pet. Brief at 7-8; PCR Tr. at 19-22).

Two potential levels of hearsay are involved: what Challed told officers Lopez and Tubbs, and what Lopez and Tubbs told Keller about what Challed said. In the Court's judgment neither out-of-court statement violated the Confrontation Clause. The Confrontation Clause states that in all criminal prosecutions "the accused shall enjoy the right . . . to be confronted with the

---

[10] The prosecutor's question did not call for hearsay. The answer volunteered what Lopez and Tubbs had told Keller.

witnesses against him." In Crawford v. Washington, 541 U.S. 36 (2004), the U.S. Supreme Court "held that the Confrontation Clause bars the admission of testimonial hearsay unless the declarant is unavailable and the accused has had a prior opportunity to cross-examine the declarant." United States v. Brun, ___ F.3d ____, 2005 WL 1797451, *3 (8th Cir. 2005); see United States v. Bordeaux, 400 F.3d 548, 555 (8th Cir. 2005). The Court does not believe a police officer's inquiry to a potential crime victim about whether an item of property is missing was the kind of formal police interrogation the Supreme Court had in mind when it said that interrogations by law enforcement are testimonial. See 541 U.S. at 53 & n.4; Brun, _ F.3d at ___; 2005 WL 1797451 at *3 (911 call made while caller witnessing an argument non-testimonial because "emotional and spontaneous rather than deliberate and calculated"). But even if testimonial hearsay from Challed was incorporated in the information relayed by Tubbs and Lopez, there was no Confrontation Clause violation because Challed testified at trial and was available for cross-examination. United States v. Wipf, 397 F.3d 677, 682 (8th Cir. 2005).

The out-of-court statement from Lopez and Tubbs that they were at the address, the binoculars belonged to that address and had been stolen, was not, in the Court's judgment, the kind of *ex parte* examination such as a police interrogation, affidavits, prior testimony and the like the court had in mind when it described the

testimonial statements the Confrontation Clause was intended to prohibit in criminal trials. <u>Crawford</u>, 541 U.S. at 50-52.

That a hearsay objection from Mr. Bell would have been successful under the Iowa Rules of Evidence is doubtful. The evidence was arguably admissible to explain why Owens was then read his <u>Miranda</u> rights and interrogated further, leading up to Owens' admissions. In the Iowa courts "[r]esponsive conduct evidence is admissible over a hearsay objection if it explains conduct itself and is relevant to some aspect of the state's case." <u>State v. Edgerly</u>, 571 N.W.2d 25, 29 (Iowa App. 1997).

At the PCR hearing Owens argued attorney Bell's failure to seek exclusion of Keller's testimony about what Tubbs and Lopez told him amounted to ineffective assistance of counsel. The PCR court did not expressly address this aspect of Owens' ineffectiveness claims. However, assuming the testimony was objectionable as a non-responsive voluntary statement, or hearsay, Bell's failure to make the objection was not, in this Court's judgment, deficient performance. By the time Keller testified, that the binoculars belonged to Challed and recently been stolen in a burglary was apparent from Challed's previous testimony. Owens' defense was not that there had been no burglary, but that he was not the perpetrator. Moreover, the failure to object to the testimony is very unlikely to have affected the outcome and does not impeach the reliability of the result reached by the jury.

6.   **Racial Composition of Jury**

With respect to this issue Owens states simply: "The makeup of the jury violated Mr. Owens' right to a fair trial. The jury was made up 11 white and one black." (Pet. Brief at 8).

Owens is an African-American. (Trial Tr. at 30). As a criminal defendant Owens had a Sixth Amendment right to a jury drawn from a fair cross-section of the community. Taylor v. Louisiana, 419 U.S. 522, 537-38 (1975). There is, however, no constitutional requirement that the jury actually selected have any particular racial makeup. Id. at 538; see Holland v. Illinois, 493 U.S. 474, 478-80 (1990). The mere fact eleven jurors were white and one was African-American did not violate the fair cross-section requirement.[11]

_____

[11]   In order to establish a prima facie violation of Taylor's fair-cross-section requirement, [a petitioner] must show: (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

United States v. Garcia, 991 F.2d 489, 491 (8th Cir. 1993)(quoting Duren v. Missouri, 439 U.S. 357, 364, 99 S.Ct. 664, 668 (1979)).

# III.

## CONCLUSION

The Court has carefully reviewed the entire trial and PCR hearing transcripts, the record of both proceedings in the Iowa District Court and on appeal to the Iowa Supreme Court, the briefs of the parties and other relevant matters appearing of record. Having done so, the Court concludes that Petitioner Frank R. Owens has not shown, to the extent addressed by them, that the Iowa courts' adverse determinations on any ground for issuance of a writ of habeas corpus presented to this Court were contrary to, or involved an unreasonable application, of clearly-established federal law, or an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Nor has Petitioner otherwise shown that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a).[12]

## RECOMMENDATION AND ORDER

IT IS RESPECTFULLY RECOMMENDED, pursuant to 28 U.S.C. § 636(b)(1)(B), that Petitioner's petition for a writ of habeas corpus be **DISMISSED.**

---

[12] Though as indicated in the discussion Owens has argued his trial counsel was ineffective in various ways, he has not expressly claimed in this habeas proceeding that his direct appeal counsel was ineffective, or identified any acts or omissions on the part of appellate counsel claimed to be deficient performance. See Burton, 295 F.3d at 845.

IT IS ORDERED that the parties have until **September 2, 2005,** to file written objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1). Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Wade for Robinson v. Callahan, 976 F. Supp. 1269, 1276 (E.D. Mo. 1997). Any objections filed must identify the specific portions of the Report and Recommendation and set forth the basis for such objections. See Fed. R. Civ. P. 72; Thompson, 897 F.2d at 357. Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact. Thomas v. Arn, 474 U.S. 140, 155 (1985); Griffini v. Mitchell, 31 F.3d 690, 692 (8th Cir. 1994); Halpin v. Shalala, 999 F.2d 342, 345 & n.1, 346 (8th Cir. 1993); Thompson, 897 F.2d at 357.

Dated this 12th day of August, 2005.


ROSS A. WALTERS
CHIEF UNITED STATES MAGISTRATE JUDGE